ALBANY,
October, 1823.

PRINGLE
v.
HUSE.

a valuable consideration without notice, and is a *bona fide* purchaser, within the meaning of the act.

Motion granted.

## PRINGLE *against* HUSE.

On the trial of a juror, upon a challenge by the plaintiff, for having expressed an opinion in favour of the defendant, the juror challenged may be called as a witness by the defendant.

Where it appears probable, that the plaintiff cannot have a trial by an impartial jury, he may refuse going to trial, and will not, for that cause, be nonsuited.

Thus, if in the course of drawing a jury at the circuit, he discovers that the box, having been left open by the clerk, the ballots therein have been arranged with apparent design to procure the drawing of a favourable jury, with other suspicious circumstances, he may withdraw his record, and on motion for judgment, as in case of nonsuit, will be excused from paying costs.

A challenge of a juror, for having given an opinion, is a principal one, and should be tried by the court.

It is, in general, highly improper for jurors, after they are summoned, to express opinions in causes which may come before them.

It is improper for the clerk of the circuit to leave the ballots unrolled, in an open box, or to draw them in this situation.

THIS cause was noticed for trial at the last *Otsego* Circuit and on the 18*th* day of *September* last, was called in its place on the calendar and was moved for trial on the morning of the 19*th*. The plaintiff challenged the first juror drawn, *to the favour*, on the ground that he had expressed an opinion in the cause against the plaintiff, after he had been summoned as a juror. Two other jurors were then drawn, and not being challenged, they sat without objection as *triors* of the challenge to the first. Two witnesses were sworn and examined before them on the issue upon the challenge. One of these witnesses was the juror challenged, who was offered by the defendant and objected to by the plaintiff as incompetent, but the objection was overruled by the Judge. The plaintiff's witness proved the declaration imputed to the juror, which the latter denied, and the *triors* found him free from all bias, and he took his seat in the box with the other two jurors. When the clerk began to draw the jury, he did it out of an open box, and drew the first juror and the *triors* out of the box thus open. Just before the decision of the *triors*, one of the plaintiff's counsel looked into the box, and stated to the Court, as was the fact, that the ballots in the bottom of the box lay in one direction—that 8 or 9 ballots, not folded, nor rolled up, but

open with the writing uppermost, and the ballots perfectly smooth, lay transversely, at right angles, across the ballots, at the bottom of the box. The Clerk admitted this to be the state of the box, but denied that he had any agency in so arranging the ballots. The plaintiff's counsel then objected to the drawing as irregular ; insisted that the box should be closed, and the ballots rolled, or folded up, according to the statute, and he proposed that this should be done now, and the drawing commence anew. This was objected to, by the plaintiff's counsel, and overruled by the Judge. The plaintiff's counsel then declared, that they would not try the cause. To this the defendant's counsel objected, stating that the two jurors, who had been drawn and sworn as *triors*, were to set as jurors on the trial of the cause, and therefore, two jurors were approved of, besides the one who had been tried and pronounced impartial. This was denied by the plaintiff's counsel, who contended, that taking the *triors* from the jury box, did not make them jurors for the trial of the cause. But without this question being decided by the Judge, the plaintiff's counsel finally declared, that they should withdraw the record, and not try the cause. The counsel for the defendant objected, that it was then too late to withdraw the record, and that they must submit to a nonsuit. The Judge said this was not a question for him to decide ; if the plaintiff's counsel chose not to try his cause, he could not compel him. The plaintiff's counsel then declared, that they should not try the cause and abandoned it ; and thus the cause went off. It appeared by the Clerk's certificate, that these jurors had been drawn, in the same manner as the other jurors, during the Circuit.

*H. R. Storrs*, upon these facts, moved for judgment as in case of non-suit.

*E. Williams*, contra. As this is our first default, the question is merely one of stipulation and costs. These are resisted on two grounds ; irregularity in drawing the jurors, and a mistake of the Judge. The cause would have been tried, had we not been prevented going on, by a partial jury being fixed upon us. This was owing to the misconduct of the

ALBANY,
October, 1823.

PRINGLE
v.
HUSE.

ALBANY,
October, 1823.

PRINGLE
v.
HUSE.

(a) 1 R. L.
331, s. 20.

Clerk, which the Judge did not correct. The statute(a) provides, that the ballots shall be rolled up as near of one size as may be, by direction and care of the Clerk, and they should be secured in a box, not open and accessible to the parties or their friends. We are entitled to a fair selection by lot.

Again : To try the challenge, *triors* were drawn. By one witness we proved to these *triors* the declaration of an opinion by the juror challenged, after he had been summoned and knew that he might be drawn as a juror. When we had done this, the Judge suffered the defendant to call the juror challenged to prove his own competency, by contradicting our witness. In this the Judge erred. Why did we challenge the juror? On account of his being biased against us ; and though we might have called him as a witness, the opposite party could not do it. It is said in *Co. Litt.* 158 b. " If the cause of challenge touch the dishonor or discredit of the juror, he shall not be examined upon his oath, to inform the *triors.*"

To the same effect is the *anonymous* case in 1 *Salk.* 153, and *Bac. Abr. Juries*, E. 12. It is the same of a juror as a witness ; if you prove his favor *aliunde*, he cannot be called to do it away. So of a witness, as to interest. Both cases stand upon the same ground. If the Judge erred, we are excused ; and if either error prevented a fair trial, we were not bound to go on.

*Storrs*, in reply. The objections to the motion, rest the rights of the parties on the decision of the Judge, which cannot be questioned in this way. If he was wrong, the question should have been raised on motion for a new trial upon a case made. But by giving effect to these objections, the order of proceeding is inverted. The plaintiff cannot elect not to try his cause at all, merely because the Judge errs at the Circuit. He fell into the peril of this motion the moment he withdrew his record. He might just as well have done this, because a witness was improperly admitted to testify on the trial ; and by listening to such objections, every motion for a judgment as in case of non-suit, will lead into

the merits of the cause. Withdrawing the record is a voluntary determination not to go to trial. He is prevented by his own act—not by that of the Court.

*Curia,* per SAVAGE, Ch. J. The statute(*b*) directs, that the names of jurors shall be rolled up on slips of paper or parchment, as nearly of one size as may be, and drawn by the Clerk ; and his conduct was certainly very reprehensible in keeping the ballot box in the situation described. The challenge, being a *principal* one, ought regularly to have been tried by the Court ; but there was no impropriety in swearing the challenged juror, as a witness.(*c*) The cause of the challenge was not such an one as went to his dishonor ;(*d*) for nothing appears, but that his opinion may have been given as an arbitrator, or on some other innocent and proper occasion.(*e*) Though it is, in general, highly improper for jurors, after being summoned, to express opinions upon causes which may come before them. The plaintiff was entitled to a jury free from partiality and bias. A challenge to the array lies for default, or partiality in the Clerk ;(*f*) and it is, undoubtedly, good cause, if the Clerk select the jury, instead of drawing by lot. It is said, in *Gardner* v. *Turner*, that if the *triors* had found against the challenge, the plaintiff must have proceeded in the cause, or he would have been in default. The remark was *obiter*, and the principle of that case seems to be, that where the plaintiff refuses to try his cause, where he has good reason to believe that he cannot have a fair trial, by an impartial jury, he shall not be nonsuited for that cause. In this case, though the *triors* decided against the challenge, they did so on the oath of the challenged juror, contradicted by an indifferent witness. There is no reason, under the circumstances, to suppose the challenge was made for the purpose of delay ; but, on the contrary, that it was made in good faith, and under an honest impression that a fair trial could not be had by that jury,

(*b*) 1 R. L. 331.

(*c*) 1 *Archb.* 185.

(*d*) *Co. Litt.* 158, b.

(*e*) 1 *Salk.* 153.

(*f*) *Gardner* v. *Turner,* 9 *John.* 260.

The motion must be denied; but, as both parties have come here, without any circumstances of unfairness being imputable to either, it must be without costs on either side.

Rule accordingly.(1)

(1) When a full jury appear, either party may challenge them for cause, as well the talesmen (1 R. L. 330, s. 14) as the jurors originally returned.

Challenges are of two kinds—to the array, or to the polls; and each of these are again subdivided into principal challenges, and challenges to the favour.

*To the array.* A challenge to the array, is an objection to all the jurors returned by the Sheriff, collectively; (Co. Litt. 156, 153;) not for any defect in them, but for some partiality or default in the Sheriff, or his under officer, who arrayed the panel. (3 Bl. Com. 359. 2 Tidd, 779. 9 John. 261.) This is the English definition, where the panel is arrayed by the Sheriff. Since our statute, authorizing the Clerk to array the jury, a challenge to the array also lies, for partiality or default in the Clerk; who, for many purposes, is substituted for the Sheriff, in selecting and arraying the jury. (9 John 261.) This is either a principal challenge, or challenge to the favour.

The causes of principal challenge to the array are such as the following, viz : that the officer who makes the array is of kindred or affinity to either party, within the ninth degree, (1 South. Rep. 364)—that one or more of the jury are returned at the nomination of either party—that an action of battery, or other action implying malice, is pending at the suit of either party, against the officer, or at the suit of the officer, against either party—that an action of debt is pending, at the suit of the party, against the officer, but not, if by the officer, against the party—that the officer holds land depending upon the same title with that in litigation between the parties—that the officer is under the distress of either party— that the officer is counsel, attorney, (Cowp. 112) officer, servant, or gossip, of either party, or is an arbitrator, in the same matter, and has treated thereof, (Co. Litt. 156)—that the Clerk, instead of drawing 36, drew 72 names, put them in a list, and selected 36 from them. (9 John. 260.)

The causes of challenge, to the array for favour, are such as imply, at least, a probability of bias or partiality in the officer, but do not amount to a principal challenge. Thus, that the plaintiff or defendant is the tenant of the officer; or that the son of the officer has married the daughter of the plaintiff or defendant, or the like. (Co. Litt. 156.)

What is said above, as to challenges to the array, must, perhaps, be understood as having reference only to common, and not to special juries; (vid. 1 R. L. 333, s. 22) for it seems very doubtful if the array, in special jury cases, can be challenged. (2 Str. 1000. 1 Str. 593. 2 L. Raym. 1364.)

CLARK
v
OSTRANDER.

CLARK *against* OSTRANDER.

ON *certiorari* to a Justice's Court. *Ostrander* had ob-
tained a judgment against *Clark*, in the Court below, on the
26*th August*, 1822, for 3 dollars and the costs, in trespass.
rent the bringing a *certiorari* to reverse it; nor supersede one already

Paying or
settling a
judgment be-
fore a justice,
does not pre-
brought.

*To the polls.* A challenge to the polls is an exception to one or more of
the jurors who have appeared individually; and this is either a principal
challenge, or a challenge to the favour. The causes of a principal chal-
lenge to the polls may be classed under the following heads.

1. Challenge, *propter honoris respectum*, (*Co. Litt.* 156. 2 *Hawk. c.* 43,
*s.* 11. 3 *Bl. Com.* 361.) is inapplicable, as depending on a title of nobility.
(*Con. U. S. art.* 1, *s.* 9, *pl.* 7.)

2. *Propter defectum*, that the juror is not qualified to serve upon a jury.
Thus, that he has not sufficient freehold, or other property, (1 *R. L.*
327, *s.* 9; *Co. Litt.* 156) excepting, of course, where the jury are *de me-
dietate linguæ*, (1 *R. L* 327, *s.* 9)—that he is within the age of 21, (*Co.
Litt.* 157 1 *R. L.* 327,) or above the age of 60, (1 *R.L.* 327) or that he is an
ideot or lunatick. (*Gilb. C. B.* 95.) So, if a woman be impanelled, she may
be challenged *propter defectu sexus*, (3 *Bl. Com.* 362) unless empanelled
on the writ *de ventre inspiciendo.* (See *Cro. Eliz.* 566.) That the juror
is an *alien*, (6 *John.* 332, 4 *Doll.* 353,) or that he is a slave, or not a res-
ident of the county, (*Co. Litt.* 156, b. *Boote*, 157.)

But a matter which merely *exempts* a man from serving on a jury, and
does not incapacitate him, can never be a cause of challenge. An instance
of these *exempts* is in 1 *R. L.* 335, *s.* 28. And it is said in *Hawk. c.* 43, *s.*
26, that if a person thus exempted, be summoned, and appear, he cannot
excuse himself from serving on a jury, if there be not a sufficient number
of jurors without him. He instances old age, &c. under the statute of
*Westm.* 2, *ch.* 38.

If a juror be erroneously named in the *distringas*, panel, &c. and
sworn by such wrong name, if the error be in the christian name it amounts
only to a matter of challenge, and cannot be objected after verdict.
(*Willes*, 488. 12 *East*, 230, a. 2 *Burn. J.* 856.) If the surname, (partic-
ularly where the person serving is not the same that was intended to be
summoned) the Court have, in such a case, set the verdict aside.
(*Willes*, 484. *Barnes*, 453. 6 *Taunt.* 460 *Barnes*, 455.) But see 12
*East*, 229, where the Court held it was discretionary with them to grant a
new trial, in such a case, or not; and that they would not do so, unless the
mistake, as to the juror, had been productive of some injustice.

In *Sept.* thereafter, he employed Mr. *Jenkins* to bring a writ of *certiorari*. Shortly 'after this, *Clark* obtained a judg-

3. Challenge *propter affectum*, by reason of some supposed bias or partiality.. Thus, that the juror is of kin to either party, within the 9th degree, (*Finch, L.* 401. 3 *Bl. Com.* 363) or, according to *Ld. Coke,* however remote the kindred, (*Co. Litt.* 157)—that there is an affinity or alliance, by marriage, between the juror and one of the parties, if such affinity continue, or there be issue of the marriage alive; for otherwise it would be but a challenge to the favour, (*Co. Litt.* 157)—that the juror is god-father to the party's child, or the party god-father to the juror's child—that the juror has land which depends upon the same title as the land in question; or, in a cause where the parson of the parish is a party, and the right to the church comes in debate, that the juror is a parishioner is a good cause of challenge; and so in all other cases where the juror has an interest in the action, direct or collateral—(See *Burr.* 1847; 2 *John.* 194; *St. sess.* 43, *ch.* 37, *s.* 3; 5 *Mass. Rep.* 90; 2 *South. Rep.* 686)—that the juror has before given a verdict in the same cause, or upon the same title or matter, though between other parties—that he was chosen arbitrator in the same cause, by one of the parties, and has entered upon an examination of it; but otherwise if he were chosen indifferently by both parties—that he is counsellor, servant, or of fee of either party, (*Co. Litt.* 157)—that he is tenant of either party, (*Gilb. C. B.* 95)—that he is of the same society or corporation with either party, (3 *Bl. Com.* 363)—but that he is his fellow servant is but a challenge to the favor, (*Co. Litt.* 157)—that he has taken information of the case before he is sworn, (2 *Hale,* 306)—that he has declared his opinion of the case beforehand, (2 *Hawk. ch.* 43, *s.* 28; 1 *John. Rep.* 316,) but not where he merely expresses a conditional opinion, thus : " If the reports of the neighbours be correct, the defendant is wrong, and the plaintiff is right ;" (8 *John.* 445; 1 *C. H. Recorder,* 24, *S. P.;* 6 *C. H. Recorder,* 71, *S. P.*)—that since ' he has been returned, he has eaten or drunk at the expense of one of the parties ; (*Co. Litt.* 157) but that one of the parties has been lately entertained at the juror's house, is only matter of challenge to the favour, (3 *Salk.* 81)—that one of the parties has laboured the juror, and given him money or other thing for giving his verdict ; but if the party only labour the jury to appear, and act conscientiously, it is no matter of challenge whatever—that an action, implying malice or displeasure, is pending between the juror and one of the parties ; but if not implying malice or displeasure, it is but matter of challenge to the favour. (*Co. Litt.* 157.)

4. Challenge *propter delictum ;* when for some act of the juror, he has ceased to be, in consideration of law, *probus et legalis homo.* Thus, that he has been convicted of treason, felony, perjury, conspiracy, forgery, &c.— that he has received judgment of the pillory or other infamous corporal punishment, for any infamous crime—that he is outlawed upon criminal process ; (*Co. Lit.* 158,) but it is doubted whether outlawry in a personal action disqualifies a man from being a juror. (See *Cro. Car.* 135. *W. Jon.* 198. *Ley,* 81.)

ment before another Justice, against *Ostrander*, for $21,30. And on the 8*th Oct.* 1822, the parties settled their accounts,

The challenge to the polls for favour, is of the same nature with the principal challenge *propter affectum*, but of an inferior degree. The general rule of law is, that the juror shall be indifferent ; and if it appear probable that he is not so, this may be made the subject of challenge, either principal or to the favour, according to the degree of probability of his being biased. The cause of principal challenge to the polls, we have seen, is such matter as carries with it, *prima facie*, evident marks of suspicion, either of malice or favour. But when, from circumstances, it appears probable that a juror may be biased in favour of, or against either party, and yet such circumstances do not amount to matter for a principal challenge, it may then be made a challenge to the favour. The effect of these two species of challenge is the same ; the only difference between them, is in the mode of trying them. (1 *Archbold*, 183. *Co. Litt.* 158, a. 2 *Caines' Rep.* 138.) If a juror declare on oath to the triors, that the testimony being equal, he should find a verdict for the plaintiff, he should be rejected. (7 *Cranch*, 291.) And in an action by a bank, the juror stating that he was the indorser of a note to the bank, was found by the triors not indifferent ; and this was holden well. (19 *John.* 115.) That he was a stockholder in the bank, would of course, be a good objection. (6 *C. H. Recorder*, 69.) If the triors are in doubt whether the juror is indifferent, they should find him not indifferent. (4 *C. H. Recorder*, 81.)

*When and how made.* No challenge either to the array or to the polls, can be made, before a full jury have appeared, (2 *Hawk. c.* 43, *s.* 1.) It is immaterial which party challenges first ; but the party who first begins to challenge, must finish all his challenges before the other begins ; otherwise, he is precluded from making any further challenges. Also, the challenges of the party who challenged first, shall be first tried. (*Tr. per Pais*, 144.)

The challenge to the array must be in writing. It may be in this form : " And now at this day, to wit, on ―― come as well the aforesaid *J. S.* as the aforesaid *J. N.* by their respective attornies ; and the jurors of the jury, impanelled, being summoned, also come ; and hereupon the said *J. N.* challengeth the array of the said panel ; because he saith that [*here set forth the matter of challenge, with certainty and precision,*] and this he is ready to verify. Wherefore he prayeth judgment, and that the said panel may be quashed." See the form of a challenge to the array that the jury were returned at the instance of the party, (2 *Burn. J* 868)―that the Sheriff is of kin to one of the parties, (*id.*)―that the Sheriff is an alderman, and interested in the event of the trial, (*Cr. Cir. Comp.* 105)―that the Sheriff is a citizen and freeman, and has paid a sum of money towards defraying the expenses of the suit, (and see a counterplea to this last challenge, and a demurrer to the counterplea. *Id.* See also, *Tr. per Pais*, 132―134. 10 *Wentw.* 474. 2 *Rich. Pract. C. B.* 180. *Lill. Ent.* 472.) Mr. *Woddeson*, the late *Vincrian* professor, has furnished the form of a challenge to the array, a demurrer, and judgment thereupon, and a prin-

ALBANY,
October, 1823.

CLARK
v.
OSTRANDER.

and set off the small against the large judgment. This was done in consequence of *Ostrander's* declaring to *Clark*, that

cipal challenge to the polls *ore tenus,* and a judgment thereupon, with some other useful particulars in relation to these challenges, which are mentioned in *Hesketh* v. *Braddock, Burr.* 1847. (See 3 *Wood. Lec.* 347, *n.* i.)

Mr. *Wooddeson's* note is thus: " As Sir *James Burrow* has not given the record at length, I have set down the form of these challenges, (which is not of every day's experience) from my MS. precedents.——" And hereupon the said S. B. prayeth judgment of the panel aforesaid, because he says that the said panel was arrayed and made by J. C. and J. D. Sheriffs of the said city of *Chester;* and that the said J. C. and J. D. were, at the time of the making of the panel aforesaid, and continually from thenceforth hitherto have been and still are citizens and freemen of the said city of *Chester ;* and this the said S. B. is ready to verify. Wherefore he prays judgment, and that the panel aforesaid may be quashed. And the said P. E. and H. H. say, that the matter in the aforesaid challenge to the array of the said panel contained, is not sufficient, in law, to quash the array of the said panel ; and this they are ready to verify. Wherefore they pray judgment, and that the array of the said panel may be allowed by the Court here. And the said S. saith for that he hath above alleged a sufficient challenge to quash the array of the panel aforesaid, which he is ready to verify, which said challenge the said P. and H. do not, nor doth either of them deny, nor to the same in any wise answer, but do, and each of them doth altogether refuse to admit that averment, he the said S. prays judgment, and that the array of that panel may be quashed. And hereupon it is judicially taken notice of by the said Court here, and is known to the same Court, that by the custom and constitution thereof, and of the city aforesaid, no person or persons can or ought to array the panel of any jury within the jurisdiction of the said Court, or in any civil suit within the same city, other than the Sheriffs of the same city, for the time being, or one of them, or (by reason of any default in the said Sheriffs) the Coroners of the said city, for the time being, or one of them ; and that, by the custom of the said city, from time immemorial, no person or persons can or ought to be Sheriffs or Coroners, of or within the said city, but citizens and freemen of the same city. And now all and singular the matters aforesaid, whereof the said parties have above put themselves upon the judgment of the said Court here, having been seen, and fully understood, by the same Court, it appeareth to the same Court here, that the matter contained in the aforesaid challenge to the array of the said panel, is not sufficient in law to quash the said array of the panel aforesaid.—— Therefore it is considered, by the said Court here, that the said challenge of the aforesaid S. to the said array of the said panel be disallowed ; and that the said panel of the aforesaid jury, so arrayed as aforesaid, be allowed and taken. And hereupon the said S. B. *ore tenus* in open Court challengeth the polls, because he says, that the jurors, above named, are citizens and freemen, and each of them is a citizen and freeman of the said

he should give security and take out the execution, notwithstanding the *certiorari* which had been brought. The

city of *Chester.* Which said challenge by the Court here is disallowed. And hereupon the said jurors," &c.

N B This challenge *ore tenus* was omitted in the first engrossment of this record ; and which the defendant *alleged diminution ;* and this challenge *ore tenus* was then inserted, &c. by rule."

The challenge to the polls is made *ore tenus ;* and it is not in general required that the party challenging shall immediately declare his cause of challenge, unless there be not a sufficient number of jurors remaining on the panel, or that the other side challenge *touts paravail.* (*Tr. per Pais*, 143. 4 *C. H. Recorder*, 81.) But if the juror were formerly sworn in the same cause, and be now challenged, (in which case the cause of challenge must have arisen since the juror was before sworn,) or, if after a challenge to the array is tried and overruled, the party challenge the polls, he must declare his cause of challenge presently. (*Co. Litt.* 158.) If a juror be challenged, and the challenge tried and overruled, he may still be challenged by the opposite party. (*Co. Litt.* 158.)

*How tried.* As to challenges to the array, it lies entirely in the discretion of the Court, how they shall be tried. Sometimes they are tried by two of the Coroners ; sometimes by two of the jury. (2 *Hale*, 275.) But see 1 *South. Rep.* 364. Perhaps any two individuals may be named by the Court, (9 *John* 261.) If the challenge, however, be a principal challenge, it may be tried by the Court itself, without the aid or intervention of triors (1 *Archbold*, 184. 1 *South. Rep.* 364.) If the facts are admitted, but are deemed insufficient, the Court adjudges on them, and either *quashes* the array, or overrules the challenge.

If the array be quashed as to the Sheriff, a new *venire* shall be awarded to the Coroner ; if quashed as to the Coroner, then the *venire* is awarded to persons appointed by the Court for that particular purpose, called *Elisors*, (See *ante*, 32,) to whose array no challenge is allowed. (*Co Litt* 158.) If the array be not quashed, the party may then make his challenges to the polls, (1 *Archbold*, 184,) as was done in *Hesketh* v. *Braddock*, (*Burr.* 1847,) and in *Wooddeson's* precedent given in this note.

A principal challenge to the polls, is tried by the Court without the aid or intervention of *triors.*

If the challenge to the polls be to the favour, it is thus tried : If two jurors have been already called, and take the box without challenge, they shall try the challenge ; if not, the Court appoint two indifferent persons to try it, and who are thence named *triors.* If the *triors* try one juror, and he is found indifferent, he and the two *triors* shall try the next. (*Co. Litt.* 158. 1 *South Rep.* 712 1 *C. H. Recorder*, 185 4 *id.* 81.) The following oath is previously administered to those who try the challenge : " You shall well and truly try whether *J S.* (the juror challenged) stands indifferent between the parties to this issue ; so help you God." See the form in a criminal case, (1 *C. H. Recorder*, 185. 1 *Salk.* 152.) More than two

ALBANY,
October, 1823.

---

*triors* or two jurors, cannot be sworn to try a challenge, except in the single case before mentioned. (1 *South. Rep.* 72.)

The juror himself may be examined as to the matter of challenge, provided it do not tend to his dishonour or discredit. (*Co. Litt.* 158. 1 *Salk.* 153. 19 *John.* 115.)

The causes of favour are infinite, and with regard to all cases of challenges to the favour, in the emphatic language of Lord *Coke*, " The rule of law is, that the juror must stand indifferent, as he stands unsworn."

One called as a juror on a trial for murder, offered an excuse, that though not a quaker, he had determined never to consent to a verdict of guilty, which involved the life of an individual. He was challenged to the favour, by the Dist. Attorney, tried, and found not indifferent. (1 *C. H. Recorder,* 185-6.)