### COMMONWEALTH *vs.* JOHN H. WALSH & another.

Suffolk.    Sept. 4, 1877 ; Jan. 24. — Feb. 27, 1878.

A challenge to the array is rightly tried by the court.

Errors or irregularities in the preparation of the list of jurors in one city or town of a county afford no ground for a challenge to the array.

On the trial of an indictment against two jointly, charging distinct offences in several counts, each defendant is entitled to no more than two peremptory challenges, under the St. of 1862, c. 84.

INDICTMENT for receiving stolen goods.   At November term 1876 of the Superior Court, the defendants, when called for trial by jury, filed the following plea or challenge to the array of the petit jury :

" And now come the said John H. Walsh and Rosanna Walsh, in their proper persons, when the jury is about to be empanelled to try the issue found on said indictment, and say that the said jury is an illegal jury, and each juror drawn is not a legal juryman, and not competent to serve otherwise :

" First.   Because they were not impartially drawn by lot from the whole body of adult male citizens of the county of Suffolk, but from a partial body of persons, from which body had been first excluded divers adult male citizens of said county of Suffolk, fit and competent to serve as jurors, and who should have constituted a part and parcel of the body of citizens from whom the jurors were drawn ; and after said persons had been selected from this imperfect body, divers adult male citizens were arbitrarily expunged and wrongfully omitted, without right and without authority of law ; and all this they are ready to verify.

" Second.   Because said jury is not a legal jury of the county of Suffolk, in this, to wit : That when, by law, it is required

that jurors shall be impartially drawn by lot from the whole body of male adult citizens of said county of Suffolk, the gentlemen comprising this jury were not impartially drawn by lot from the whole body of male adult citizens of the said county of Suffolk, but, contrariwise, were selected by design, and were also selected and drawn not from the whole body of adult male citizens, but from a lesser number of persons comprising not more than one fifth part of the whole body of adult male citizens of said county; and, furthermore, the prisoners aver that, after said selecting, divers names of adult male citizens of the county of Suffolk, competent and fit to serve as jurors, were illegally, and without authority of law, struck off and omitted from the list; and this the defendants are ready to verify; and so the prisoners say that said illegal jury is not a legal jury, but a packed jury; and this they are ready to verify."

To this the attorney for the Commonwealth filed the following replication:

"And thereupon Heman W. Chaplin, assistant district attorney, who prosecutes for said Commonwealth in this behalf, says that, by reason of anything in the said pleading by said John H. and Rosanna Walsh alleged, the said Commonwealth ought not to be precluded from prosecuting said indictment against the said John H. and Rosanna Walsh, because he says that:

"First. Said jury was impartially drawn by lot from the whole body of the adult male citizens of the county of Suffolk, fit and competent to serve as jurors.

"Second. Said jury was not selected by design from the whole body of adult male citizens of the said county of Suffolk, but was drawn impartially by lot, as aforesaid, from the list of jurymen legally and properly made up by the proper authorities of the cities of Boston and Chelsea, Winthrop and Revere, in the said county of Suffolk.

"And this the said Heman W. Chaplin is ready to verify. Wherefore he prays judgment, and that the said John H. and Rosanna Walsh may be required to go before said jury."

Upon the issue of fact thus raised, the defendants claimed a trial by jury. But *Rockwell*, J., ruled that the judge without a jury was the proper tribunal to try that issue, and proceeded

to try it; and to this ruling and proceeding the defendants alleged exceptions.

At the trial upon the issue aforesaid, it appeared that venires had been issued on September 25, addressed to the constables of the cities and towns respectively, for thirty-six jurors from the city of Boston, four jurors from the city of Chelsea, and one juror each from the towns of Winthrop and Revere.

The defendants called as a witness the city clerk of Boston, from whose testimony and from the records produced by whom it appeared that the last list of jurors added to the box from which the jurors in Boston were drawn was prepared and accepted as follows: In January, 1876, an order was passed by the board of aldermen and approved by the mayor, " that the list of jurors in this city who are qualified to serve in the several courts of the county of Suffolk be revised by this board, and be posted in the court-house and city hall, and be thereafterwards submitted to the common council for revision and acceptance pursuant to law." After the passage of this order, the city clerk, acting as clerk of the board of aldermen, but not in their presence, took out of the box the names of persons who had died or removed from the city, and then reported to the board of aldermen the further number of jurors required, and gave to each alderman the list of voters in the different wards of the city, requesting each alderman to mark a certain number of names in certain wards. Each alderman did so, and delivered the list so marked by him to the clerk. As soon as the names were selected by each alderman, a printed list of all the names so selected was made by the clerk, and on March 28 was posted in the court-house and in the city hall. The list, so prepared and posted, was revised and accepted on April 10 by the board of aldermen, and on April 14 by the common council.

The defendants contended that the jury was not a legal jury, because the provisions of the Gen. Sts. c. 132, for the selection of jurors, were unconstitutional; because the selection was not made from all the inhabitants of the city of Boston, computing by the then last census, but from the voting list; because names were taken out of the jury box by the city clerk; and because the list posted was prepared by the aldermen acting separately,

and not by the whole board of aldermen. But the judge ruled that, in the absence of fraud, (which he found not to exist as a fact,) the jury had been legally and properly drawn, summoned and returned, and was fit to be empanelled to try this case. To this ruling the defendants alleged exceptions.

The indictment contained seven counts for distinct offences. Each defendant, at the calling of the jury empanelled, claimed more than two peremptory challenges. But the judge ruled that each defendant was entitled to but two such challenges, and refused to allow more, and the jury was empanelled accordingly; and to this ruling and refusal the defendants, having been found guilty, alleged exceptions.

Briefs were submitted in September, 1877, upon the points above stated, and afterwards, at the request of the court, upon the question whether the facts proved would support a challenge to the array.

*J. B. Richardson*, for the defendants.

*C. R. Train*, Attorney General, & *W. C. Loring*, Assistant Attorney General, for the Commonwealth.

GRAY, C. J. The trial of the challenge to the array by the court, and not by a jury or by triers appointed for the purpose, affords the defendants no ground of exception. By the common law, a challenge to the array might be tried either by the court itself, or by such officers or persons as it might designate. *Lloyd* v. *Williams*, 2 Rol. R. 363. 2 Hale P. C. 275. Bac. Ab. Juries, E. 12. 7 Dane Ab. 331. And in this Commonwealth, as elsewhere in New England, all challenges have usually been tried by the court. Samuel Dexter, *arguendo*, in *Borden* v. *Borden*, 5 Mass. 67, 71. 7 Dane Ab. 334. *Commonwealth* v. *Knapp*, 9 Pick. 496, 499. 12 Am. Jur. 330–340, 548–550. *State* v. *Jewell*, 33 Maine, 583. *State* v. *Howard*, 17 N. H. 171, 191. *State* v. *Clark*, 42 Vt. 629. 2 Swift's System, 233. *State* v. *Potter*, 18 Conn. 166, 171.

A challenge to the array is to the whole body of jurors returned from the county, and appears, at common law, to have been allowed only on account of the partiality or default of the sheriff or other officer who made the return. All the cases referred to by counsel were of that character. If the sheriff returned a juror on the nomination of one of the parties, or

knowingly returned a person more favorable to one party than to the other, it showed partiality, or, as it was called, unindifferency, on the part of the sheriff, which was a ground for challenging the array, and consequently could not be a cause of challenge to the polls. So if the sheriff failed to summon a knight, in a case in which the law required a knight to be one of the jury, it showed a default on the part of the sheriff. So if the sheriff, or his bailiff or under-officer, for whose acts he was responsible, returned persons who were not within the franchise, it was misconduct in the sheriff, and therefore ground for challenging the whole array. Co. Lit. 156. 3 Bl. Com. 359. 1 Chit. Crim. Law, 536–539. If a bailiff returned some of the jurors at the nomination of a party or his prosecutor, it was ground for a challenge to the array, if the same bailiff returned the whole array, but not if the array was made by divers bailiffs. 2 Rol. Ab. 641. If all the jurors were of affinity to a party, it was not a ground of challenge to the array, but only of challenges to the polls. 2 Rol. Ab. 638.

In *The King* v. *Edmonds*, 4 B. & Ald. 471, it was held that, while a challenge to the array might be taken for unindifferency of the sheriff or coroners, who were general officers of the court, and were bound by their duty to attend at the assizes, and in fact usually did so, yet, when jurors were summoned by another officer under rule of court, no challenge to the array could be allowed for his unindifferency; and this, not only because he was specially appointed by the court for the purpose, but, as Lord Tenterden observed, because of the great inconvenience that would ensue and the almost utter incapacity of inquiring into the matter satisfactorily at *nisi prius*, in the absence of the person by whom the panel had been formed, and accordingly without any opportunity of answer or explanation. It was also held, in the same case, that the neglect of an inferior officer to summon a person named in the panel was no ground for challenging the array.

In *O'Connell* v. *The Queen*, 11 Cl. & Fin. 155, a challenge to the array alleged that the jurors' book had not been completed in conformity with the requisitions of an act of parliament, and that the names of fifty-nine persons, duly qualified to serve as jurors, had been fraudulently omitted from the general list from

which the book was made, and from the book itself, for the purpose of prejudicing the defendant; but the challenge did not contain any specific accusation of the sheriff or other returning officer concerned in preparing the list. Lord Denman, Lord Campbell and Mr. Justice Coleridge thought that the challenge was good. pp. 352–363, 407–411. But Lord Lyndhurst, Lord Brougham, Chief Justice Tindal and the other judges were of opinion that it was bad, and that the only ground upon which a challenge to the array could be allowed by the English law was the unindifferency or default of the sheriff or other officer by whom the panel was returned. pp. 247, 249, 323, 325, 348. The House of Lords reversed the judgment on another ground, and made no decision upon this point. And the present case does not require us to consider whether fraud or misconduct in preparing a list from which the whole panel was drawn would sustain a challenge to the array.

By the statutes of this Commonwealth, the whole panel is not, as in England, drawn from a single list, or returned and arrayed by the sheriff. The venires are severally addressed to the different towns and cities in the county by the clerk of the court, who is directed in issuing them to require from each town or city a number of jurors proportionate to its number of inhabitants; and are delivered to the sheriff, and by him transmitted to a constable in each town and city, and served by the constable upon the selectmen and town clerk or upon the mayor and aldermen. Gen. Sts. *c.* 132, §§ 10–12, 22. The jury list in each town or city is prepared by the selectmen and town clerk and revised and accepted by the town, or prepared by the mayor and aldermen and revised and accepted by the common council. §§ 6–9, 21. From such list the jurors are drawn by the selectmen or the mayor and aldermen; and the venire is served by the constable on each juror so drawn, and is returned by the constable to the court. §§ 15–20, 22. The array of the jurors is made up by the clerk of the court. § 23. Of the constitutionality of these provisions, in the light of the course of legislation and decision in Massachusetts, there can be no doubt. *Commonwealth* v. *Brown*, 121 Mass. 69, 78.

Partiality or misconduct in the issue and transmission of the venires by the sheriff or the clerk of the court might be ground

for a challenge to the array, because it would show that there was no legal jury. *Gardner* v. *Turner*, 9 Johns. 260. *Clinton* v. *Englebrecht*, 13 Wall. 434. But an objection to the manner of preparing the jury list, or of drawing the jurors, or to the return of the constable, in any town or city, does not affect the whole panel, but only the jurors from that town or city, and is therefore not a ground of challenge to the array, but only of challenges to the polls of those jurors. 6 Dane Ab. 535. The objections taken in the case at bar are to the manner in which the list from which jurors were drawn in Boston was prepared and posted by the aldermen and the city clerk. If these objections to the thirty-six jurors from the city of Boston supported a challenge to the array, they would be equally effective if they applied only to the single juror drawn from the town of Winthrop or the town of Revere.

As the facts proved afford no ground for a challenge to the array, we give no opinion upon the sufficiency in form of that challenge, or upon the regularity of the proceedings of the municipal officers.

As to the peremptory challenges to the polls, the terms of the St. of 1862, c. 84, clearly show that the defendants were each entitled to no more than two challenges, whatever the number of the counts in the indictment, or of the offences therein described.

*Exceptions overruled.*