## PEOPLE v. TIRNAUER.

(Supreme Court, Special Term, Kings County.   July 23, 1912.)

1. CRIMINAL LAW (§ 1026*)—RIGHT OF APPEAL—STAY OF EXECUTION OF SENTENCE.

Under the statutes of the state, every person convicted of a felony or a misdemeanor has an absolute right of appeal from the judgment of conviction, but, except in capital cases, an appeal does not stay execution of the sentence, unless a certificate of reasonable doubt is filed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2615–2618;  Dec. Dig. § 1026.*]

2. CRIMINAL LAW (§ 1073*)—APPEAL—STAY OF EXECUTION—CERTIFICATE OF REASONABLE DOUBT.

Under Code Cr. Proc. § 527, which provides for a stay of execution of a sentence upon filing with the notice of appeal a certificate that "in the opinion of the court there is reasonable doubt whether the judgment should stand," the judge hearing the application need not be satisfied that the judgment will be reversed, nor determine whether the error complained of would warrant a new trial, but it is enough that he is satisfied that a question of law is raised sufficient for the consideration of the appellate tribunal; nor need the court, before granting a certificate, arrive at a positive conclusion that the trial court erred, but it is enough if he have reasonable doubt as to the correctness of the law laid down, nor need the applicant show that the alleged error did in fact prejudice him, but the court must be satisfied that the error complained of could not in any way have prejudiced defendant before it is warranted in denying a certificate.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. § 1073.*]

3. CRIMINAL LAW (§ 1073*)—APPEAL—CERTIFICATE OF REASONABLE DOUBT—SUFFICIENCY OF MOTION.

Under Code Cr. Proc. § 529, which provides that an application for a certificate of reasonable doubt must be founded upon the record of the cause and a notice of motion duly served on the district attorney or upon such record and an order to show cause, granted either by the trial judge or a justice of the Supreme Court, and that the moving papers must contain formal specification of the alleged erroneous rulings and of any other grounds upon which the application is based, an affidavit accompanying an order to show cause granted by the trial judge, which referred to the record of the cause, a copy of which was submitted upon argument, and moving papers which contained formal specification of alleged errors, pointing out the pages of the record where such errors could be found, was sufficiently founded upon the record and the order; the statute not requiring that a copy of the record should be attached.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. § 1073.*]

4. CRIMINAL LAW (§ 814*)—APPEAL—HARMLESS ERROR—INSTRUCTIONS.

It is error for the court in a criminal case to suggest to the jury and submit for their consideration a theory of the facts which has no foundation in the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1821, 1833, 1839, 1860, 1865, 1883, 1890, 1924, 1979–1985, 1987; Dec. Dig. § 814.*]

5. CRIMINAL LAW (§ 1073*)—APPEAL—CERTIFICATE OF REASONABLE DOUBT.

Where the state in a prosecution for arson, over defendant's objection and exception, used the testimony of fire marshals who had investigated the fire, contrary to the express prohibition of Greater New York Charter (Laws 1901, c. 466) § 779, and where a witness, in spite of warning by the court, referred to defendant's connection with a previous "crooked"

fire, and stated that the one which the defendant was charged with setting was also "crooked," and persistently dragged in such incompetent testimony in the guise of statements claimed to have been put to defendant during investigation, the granting of a certificate of reasonable doubt was authorized.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. § 1073.*]

Isidor Tirnauer was convicted of arson in the second degree, and he appeals. On application for a certificate of reasonable doubt. Certificate granted, and bail fixed.

Isidore Canner, for application.
Matthew J. Smith, Dist. Atty., for the People.

BENEDICT, J. The defendant has been convicted by the verdict of a jury in the County Court of Queens county of the crime of arson in the second degree, and upon the 31st day of May, 1912, he was sentenced by the county judge of that county to be confined in the State's Prison at Sing Sing for a term of not less than five nor more than ten years. He has taken an appeal to the Appellate Division of the Supreme Court from the judgment of conviction, and now asks for a certificate of reasonable doubt as to the lawfulness of his conviction, under the provisions of section 527 of the Code of Criminal Procedure.

[1, 2] In the system of criminal jurisprudence in force in this state, every person convicted of a felony or a misdemeanor has an absolute right of appeal from the judgment of conviction, and no certificate or consent is required to render such appeal effectual, but his appeal will not stay the execution of his sentence (except in the case of an appeal to the Court of Appeals from a judgment of death) unless he obtain a certificate of reasonable doubt. Code Crim. Proc. § 527; People v. Sharp, 9 N. Y. St. Rep. 155. Such a certificate formerly was "of the judge who presided at the trial, or of a judge of the Supreme Court, that in his opinion there is reasonable doubt whether the judgment should stand." See Code Crim. Proc. § 527, being chapter 442, Laws 1881. This provision was continued in force, except for the substitution of the word "justice" for the word "judge" of the Supreme Court, through the several amendments to the act made by chapter 360, Laws 1882; chapter 493, Laws 1887; chapter 880, Laws 1895. By chapter 479 of the Laws of 1907, however, the power to grant such a certificate was no longer one to be exercised by a justice of the Supreme Court, but by the court itself, and by section 529 an application for the certificate was required to be made to and heard and determined "by a regularly appointed Special Term of the Supreme Court held within the judicial district in which the conviction was had," unless the application were made to and the certificate made by the court in which the conviction was had; that court being a court of record. See People v. Meadows, 62 Misc. Rep. 573, 115 N. Y. Supp. 656. The effect of this change, as I view it, is to a great extent one of practice merely, rather than one of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

substance, and so I think that the rules formerly applicable as to the degree of doubt which must exist in the judicial mind to warrant the granting of the certificate are still in force; but, instead of the justice being satisfied, the court must judicially determine that "in the opinion of said court there is reasonable doubt whether the judgment should stand," and this determination will be expressed in a formal order to be entered upon the records of the court.

The rule to which I have reference was stated by Mr. Justice Woodward in People v. Hummel, 49 Misc. Rep. 136, 98 N. Y. Supp. 713, in a quotation from Mr. Justice Truax, as follows:

"On an application for a stay of proceedings in a criminal case, it is not necessary that the judge to whom the application is made should be satisfied that the judgment will be reversed. It is enough that he is satisfied that a question of law is raised sufficient for the consideration of the appellate tribunal. On such application, it is not required that the judge to whom the application is made should determine whether the error complained of warrants the granting of a new trial, for the granting or refusing of a new trial is vested in the appellate court, which may 'order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below.'"

And Mr. Justice Potter in People v. Sharp, supra, said:

"This devolves the duty upon the judge to whom the application for such certificate is made to form an opinion whether the judgment should stand."

See, also, People v. Hall, 23 Misc. Rep. 479, 49 N. Y. Supp. 158. To grant a certificate the judge hearing the application need not arrive at a positive conclusion that the trial court erred, but it is enough if he have reasonable doubt as to the correctness of the law laid down by that court. People v. Emerson, 5 N. Y. Supp. 374; People v. Valentine, 19 Misc. Rep. 555, 44 N. Y. Supp. 903; People v. Wentworth, 3 N. Y. Cr. R. 111. It was said by Justice Wright in People v. Hartung, 17 How. Prac. 151, that, where a judge has grave doubt of the correctness of the rulings of the trial judge, it is his duty, in the exercise of the judicial discretion with which he is clothed, to stay the execution of the judgment. And to the same effect is People v. Hendrickson, 1 Parker, Cr. R. 396, which was a case where there was an exception involving a gravely important question, in regard to which there was a conflict of authority which remained unsettled by the courts of this state. It is not necessary for the applicant to show that the alleged error did, in fact, prejudice the defendant, but the judge must be satisfied that the error complained of could not in any way have affected or prejudiced the defendant before he is warranted in denying a certificate. People v. Valentine, supra. In the light of these rules, which I shall assume are now as applicable to the court to which the application for a certificate is made, as they were formerly to a justice of that court, the application for a certificate in the present case must be granted.

[3] Before, however, discussing the merits of the application, I shall consider a point which is in the nature of a preliminary objec-

tion made by the learned district attorney to the hearing of the application. He says:

"The motion is brought on by an order to show cause attached to which order is the affidavit of the defendant's attorney, Isadore Canner. It will be observed that in this order it is recited that the motion is made upon said affidavit. It is not made upon any other papers or upon the record of trial or any part of it; simply and solely upon the aforesaid affidavit."

And he claims that this is insufficient, and cites as authority People v. Hess, 6 Misc. Rep. 246, 26 N. Y. Supp. 630, which was decided in 1893. In this I think he is, wrong. Section 529 of the Code of Criminal Procedure, as amended in 1907, provides that:

"Such an application must be founded upon the record of the cause and a notice of motion duly served on the district attorney of the county where the conviction was had, or upon such record and an order to show cause granted either by the trial judge or by a justice of the Supreme Court; the moving papers must contain a formal specification of the particular rulings alleged to have been erroneous and of any other grounds upon which the application is based."

The affidavit accompanying the order to show cause, which was granted by the county judge before whom the trial was had, refers repeatedly to the record of this cause, and a copy of the record was submitted upon the argument. The moving papers spoken of in the section do contain a formal specification of the errors claimed to have been made, and point out the various pages of the record where such alleged errors may be found. The application is "founded" upon the record and the order to show cause. I think that the meaning of the statute was not that a copy of the record should be attached to the order to show cause, but only that the record could be used upon the application. The statute does not say that the moving papers must contain the record, but only that they must contain a formal specification of the particular rulings alleged to have been erroneous and of any other grounds upon which the application is based.

Proceeding now to the merits. The application specifies a number of errors committed upon the trial which it is claimed will require the reversal of the judgment. The first to be considered are the remarks of the district attorney who tried the case. These were, I think, very prejudicial to the defendant, and entitled him to have his motion for the withdrawal of a juror granted. See folio 13 of Canner's affidavit and pages 28, 29, and 30 of the stenographer's minutes. The motion was not granted, although the court twice stated to the district attorney that his remark was "improper," and thereupon the defendant excepted. It seems to me that the remarks were fully as obnoxious as those for which the Court of Appeals reversed the judgment in People v. Smith, 162 N. Y. 520, 531, 56 N. E. 1001.

[4] Secondly. I think that that portion of the court's charge to the jury "that the people contend that not only did he set the place on fire, but that he had a motive for setting it on fire, that he had a policy of insurance from which he hoped at the time to realize a sum of money in excess of what he could get for it in the usual channels of trade or quicker than he could get it in the usual channels of trade"

(see page 303, stenographer's minutes), and that "the policy of insurance was in excess of the value of the property, and that he hoped to realize profit by this quick method of getting rid of his property" (see page 356), was erroneous because it was unsupported by and contrary to the evidence. There was no evidence offered by the people that the property was insured for more than it was worth. The testimony of Kronoff, a witness for the people, was to the contrary (see pages 81 and 82), and so was the testimony of defendant's witnesses (see pages 188–214, 215, and 223). This portion of the charge was duly excepted to, and under the ruling in People v. Barberi, 149 N. Y. 256, 43 N. E. 635, 52 Am. St. Rep. 717, it is error for the court to suggest to the jury and submit for their consideration a theory of the facts which has no foundation in evidence.

[5] Thirdly. I come now to the consideration of the third specification of error which I shall notice. It involves the question of the right of the prosecution to use upon the trial any testimony or evidence obtained by the fire marshals in their investigation and inquiry into the cause of this fire, under the provisions of the charter as they existed when the investigation was made. The fire took place on March 21, 1911, at the defendant's place of business in Jamaica avenue, Richmond Hill, Queens county, in the city of New York. At that time section 779 of the Greater New York Charter contained the following provision:

"The fire commissioner, himself or by said marshals, is hereby authorized and empowered to investigate, examine and inquire into the origin, details and management of fires in the city, and also of any supposed cases of violation of any of the provisions of this chapter, * * * or any supposed cases of arson or incendiarism, which may be brought to his notice; * * * provided, that any testimony or evidence taken as aforesaid shall be for the information and instruction of said fire commissioner in the discharge of his duties, and in the prevention of future fires, and the protection of property and shall be carefully kept in the archives and possession of said fire department, *and shall in no manner be used in any criminal proceeding or action,* but may be placed before any grand jury in said City of New York. * * *"

The witness Brophy (page 95) was acting fire marshal, the witness Anderson (page 14) was assistant fire marshal, and the witness Ferris (page 83) was deputy fire marshal, in the boroughs of Brooklyn and Queens of the city of New York. Each of them was allowed to testify over the defendant's objection and exception to evidence which they had gathered in the course of their official investigation of the fire in question. The charter provision conferring upon these officials the right of investigation into the causes of fires and into any supposed cases of arson or incendiarism declares that the evidence shall in no manner be used in any criminal proceeding. The evidence gathered was used in this case as the basis of testimony of these official witnesses, and no one can read their testimony without reaching the conclusion that it must have been the most potent part of the case of the people, nor that without it the defendant would never have been convicted.

It is probably true, as the district attorney points out, that this section is practically repealed by chapter 899 of the Laws of 1911, but that chapter did not go into effect until October 19, 1911, and there is nothing in it to show the legislative purpose to enact a retroactive law.

Lastly. During the course of his examination the witness Brophy repeatedly, despite the warning of the presiding judge, referred to his previous knowledge of the defendant's connection with another and previous "crooked" fire, and stated his opinions and conclusions that the one in issue was also "crooked," as he called it. He was persistent in dragging such incompetent testimony into the case in the guise of questions and statements which he claimed to have put to the defendant in the course of his investigation. The minutes (pages 95 to 131) teem with this kind of evidence, which from its very nature is difficult to refute, and very convincing to a jury. The learned trial judge used every means to prevent this infringement of the defendant's rights to a proper and legal trial, short of stopping the trial. I think it would have been wiser had he done this (see People v. Brown, 110 App. Div. 490, 96 N. Y. Supp. 957, affirmed, 188 N. Y. 554, 80 N. E. 1115), where the Court of Appeals held that such testimony was inadmissible, saying:

"It was very dangerous evidence in the case. It was not harmless, as claimed. * * * It must have had a serious effect upon the minds of the jury and may well have induced a verdict of guilty which would not otherwise have resulted."

While it may very well be that this defendant was guilty of the dangerous and abhorrent crime of which he has been found guilty, I am not now without grave doubts of the correctness of those parts of his trial to which reference has been made. Conscientiously entertaining such doubts, I deem it my duty to afford the prisoner an opportunity of presenting them, with others raised in the case, to the more deliberate examination and judgment of an appellate tribunal.

An order embodying a certificate of reasonable doubt may be presented to this court for entry. Bail will be fixed at the sum of $5,000.